# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARCH INSURANCE COMPANY, | ) |
|     Plaintiff / Counterclaim Defendant, | ) ) ) ) |
| v. | )   Case No. 18-CV-0362-CVE-FHM |
| LINDA HARRIS, Personal Representative of the Estate of Randall Lee Harris, | ) ) ) |
|     Defendant / Counterclaim Plaintiff, | ) ) ) ) |
| AND | ) ) |
| COURTNEY ELYSE SHILLINGTON, Personal Representative of the Estate of Dale Bryant Shillington, | ) ) ) ) |
|     Interested Party / Counterclaim Plaintiff. | ) ) |

## OPINION AND ORDER

Now before the Court are plaintiff/counterclaim defendant Arch Insurance Company's motion for summary judgment and brief in support (Dkt. # 22); the motion for summary judgment and brief in support (Dkt. # 35) filed by interested-party/counterclaim plaintiff Courtney Elyse Shillington, Personal Representative of the Estate of Dale Bryant Shillington; and the motion for summary judgment and brief in support (Dkt. # 36) filed by defendant/counterclaim plaintiff Linda Harris, Personal Representative of the Estate of Randall Lee Harris.

Arch filed this action against Harris and Shillington, seeking a declaration that the terms of an insurance policy, issued by Arch to Randall Harris (Mr. Harris), limit to $100,000 Arch's

obligation to indemnify the Harris estate for all damages, if any, owed to the Shillington estate. Dkt. # 2, at 6-7. Harris and Shillington each filed a counterclaim against Arch, seeking a declaration that the terms of the policy limit to $1,000,000 Arch's obligation to indemnify the Harris estate for all damages, if any, owed to the Shillington estate. Dkt. # 11, at 12; Dkt. # 14, at 2-3. Arch moved for summary judgment (Dkt. # 22), and Shillington and Harris each filed a response in opposition to Arch's motion (Dkt. ## 32, 34). Shillington then moved for summary judgment (Dkt. # 35). Arch filed a response in opposition to Shillington's motion (Dkt. # 39), and Shillington filed a reply (Dkt. # 42). Finally, Harris moved for summary judgment (Dkt. # 36), and Arch filed a response in opposition to Harris's motion (Dkt. # 43).

## I.

For purposes of the motions for summary judgment, the following facts are undisputed by all parties:

On July 21, 2016, Mr. Harris and 1st Lt. Dale Bryant Shillington (Lt. Shillington) died in an aircraft accident. Dkt. # 22, at 2. Mr. Harris and Lt. Shillington were in a Skybolt 300 aerobatic aircraft owned by Mr. Harris. Id. Defendant Linda Harris is the surviving spouse and personal representative of the estate of Mr. Harris. Id. Interested-party Courtney Elyse Shillington is the surviving spouse and personal representative of the estate of Lt. Shillington. Id. Lt. Shillington was also survived by his parents, Kevin and Sue Shillington. Id. at 3. Interested-party Shillington commenced a wrongful death lawsuit, individually and as the personal representative and widow of Lt. Shillington, against the Harris estate in the District Court for Garfield County, Oklahoma, Case No. CJ-2018-162-01. Id. The Shillington estate contends that Mr. Harris is legally responsible for Lt. Shillington's death, and the Harris estate denies liability. Id. At the time of the aircraft accident,

2

there was in full force and effect Policy NVAVP00834-00, with a policy period of 12/26/15 to 12/26/16, which had been issued to Mr. Harris by Arch ("the policy"). Id. The policy provides Aircraft Hull and Liability insurance coverage. Id.

Although the parties dispute the proper interpretation of the policy, it is undisputed that the policy contains the following provisions:

> Under **SECTION II – BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE** . . . Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.
> . . .
> **A.    BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE**
> . . .
> **4.    Coverage G – Single Limit Bodily Injury and Property Damage Liability**
>
> We will pay all sums an Insured legally must pay as damages because of **Bodily Injury** sustained by any person (excluding any **Passenger** unless the words "including **Passengers**" appear in Item 9 of the Declarations) and **Property Damage** caused by an **Occurrence** and arising out of the:
>
> a.    Ownership, maintenance or use of the **Aircraft**; or
>
> b.    Maintenance or use of the **Premises**.

Dkt. # 2-2, at 8-9 (emphasis in original).

Item 9 of the Declarations, as referenced in Section II.A.4 of the policy, contains a chart, which is excerpted below:

3

| BODILY INJURY AND PROPERTY DAMAGE COVERAGES | | LIMITS OF LIABILITY | | |
|---|---|---|---|---|
| | | EACH PERSON | EACH OCCURRENCE | LIABILITY PREMIUMS |
| . . . | . . . | . . . | . . . | . . . |
| **Coverage G.** | **Single Limit Bodily Injury and Property Damage Liability--** | XXXXXX | $1,000,000 | ■ |
| | Including Passengers with Passenger Liability Limited internally to: $ | $100,000 | XXXXXX | ■ |

Id. at 2. Under the policy, the term "'Passenger' means any person in, on, or boarding the Aircraft for the purpose of riding or flying in the Aircraft or alighting from the Aircraft after In Flight or attempted In Flight. The term 'Passenger' also includes Crew." Id. at 24 (emphasis omitted). It is undisputed that Lt. Shillington was a passenger at the time of the occurrence. Further, the policy provides that "'Bodily Injury' means bodily injury, including mental anguish, sickness or disease sustained by a person, including death resulting therefrom." Id. at 22 (emphasis omitted).

Arch's exposure under Coverage G, "Single Limit Bodily Injury and Property Damage Liability," is limited by the following provisions contained in Section II.E of the policy:

> **E.     LIMITS OF INSURANCE**
> . . .
>
> **5.     Coverage G.** Our total liability for all damages because of **Bodily Injury** or **Property Damage** sustained by one or more persons or organizations as a result of any one **Occurrence** shall not exceed the Limit of Insurance stated in the Declarations as applicable to Each **Occurrence**.
>
> Subject to the Each **Occurrence** Limit of Insurance described in the paragraph above, if the Declarations indicate a Sub-Limit for Each **Passenger**, our total liability for all damages because of **Bodily Injury** to any one **Passenger** shall not exceed the Limit of Insurance stated in the Declarations as applicable to Each Person. Further, subject to this Each Person limit provision, our total liability for all damages because of **Bodily Injury** sustained by two or more **Passengers** as the result of any one **Occurrence** shall not exceed a

4

>       Limit of Insurance which shall be calculated by multiplying the Each Person Limit of Insurance by the total number of **Passenger** (including **Crew**) seats as shows in Item 9 of the Declarations for the **Aircraft** involved in the **Occurrence**. This Limit of Insurance is included in, and not in addition to, the Each **Occurrence** Limit of Insurance shown on the Declarations.
>
>       In no event shall our liability for all **Bodily Injury** (including **Passenger Bodily Injury**) and **Property Damage** exceed the Limit of Insurance stated in the Declarations as applicable to Each **Occurrence**.
>
>    **6.** For the purpose of determining the limit of our liability as described in the above paragraphs of this provision, all **Bodily Injury** and **Property Damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**. Regardless of the claimant's relationship to the injured party and the alleged injury, damage, loss, cost or expense claimed, all claims and related claims arising out of, based upon or attributable to the **Bodily Injury** to any person or **Passenger** are included in, and not in addition to, the Each Person and Each **Occurrence** Limits of Insurance specified in the Declarations, as applicable.

Id. at 12-13 (emphasis in original).

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Although there are three motions for summary judgment pending before the Court, the motions concern a single issue of policy interpretation: whether a passenger's family's claims are subject to the $100,000 "Each Person" limit of liability or the $1,000,000 "Each Occurrence" limit of liability.[1]

---

[1] Cross-motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979). "To the extent the cross-motions overlap, however, the court may address the legal arguments together." Berges v. Std. Ins. Co., 704 F.Supp.2d 1149, 1155 (D. Kan. 2010). The legal issues and arguments made with respect to all three motions are virtually identical.

A. General Principles Regarding Interpretation of Insurance Policies

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997) (applying Oklahoma insurance law). In Oklahoma, interpretation of an insurance contract is a matter of law. Max True Plastering Co. v. U.S. Fid. & Guar. Co., 912 P.2d 861, 869 (Okla. 1996).

"In Oklahoma, 'an insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." Emcasco Ins. Co. v. CE Design, Ltd., 784 F.3d 1371, 1378 (10th Cir. 2015) (quoting Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991)). "'The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.'" Id. (quoting Wiley v. Travelers Ins. Co., 534 P.2d 1293, 1295 (Okla. 1974)). "We construe the terms of the insurance policy in their plain and ordinary sense if they are unambiguous, clear, and consistent." Id. A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fid. and Guar. Co., 912 P.2d 861, 869 (Okla. 1996).

B. Analysis

In her state court action against the Harris estate, Shillington seeks damages for "the mental pain and physical pain and suffering and mental anguish suffered by Plaintiff's decedent" prior to

his death. Dkt. # 2-1, at 2. In addition, Shillington seeks damages for "loss of support, grief, loss of companionship, mental anguish, loss of society, comfort and companionship of the Plaintiff's decedent." Id. Finally, Shillington seeks damages for "the grief (which is both mental anguish and bodily injury), and loss of companionship suffered by decedent Shillington's parents, Kevin and Sue Shillington." Id.

To the extent Shillington seeks damages for the bodily injury, including mental anguish, suffered by Lt. Shillington, a passenger, there is no real dispute that Arch's duty to indemnify the Harris estate for such damages is subject to the policy's $100,000 "Each Person" limit of liability. Dkt. # 2-2, at 13 ("[O]ur total liability for all damages because of Bodily Injury to any one Passenger shall not exceed [$100,000]."). The question is whether the damages sought for the bodily injury (i.e., mental anguish) allegedly sustained by Shillington and Lt. Shillington's parents, all of whom are considered non-passengers, are also subject to this $100,000 single limit of liability.

Harris and Shillington argue that the policy does not limit to $100,000 coverage for bodily injury claims of persons who are not passengers. Dkt. # 35, at 7-8; Dkt. # 36, at 7. As support, they argue that the Court should rely on the Tenth Circuit's decision in Old Republic Insurance Company v. Durango Air Service, Inc., 283 F.3d 1222 (10th Cir. 2002). The policy at issue in Durango, like the policy at issue here, defined "bodily injury" to include mental anguish sustained by any person, not just a passenger. Id. at 1226. Further, like the policy here, the Durango policy provided that the insurer's total liability for all damages because of bodily injury to any one passenger shall not exceed the "Each Person" limit stated in the declarations (i.e., $100,000). Id. The Tenth Circuit noted that this provision "explicitly refer[red] to *passenger* liability [and] ma[de] no mention of limiting liability for *non-passenger* bodily injury." Id. at 1227 (emphasis in original). The Tenth Circuit

8

determined that this made "clear that the Policy limitation was intended to apply to bodily injury sustained by *passengers*, but not to injuries sustained by *non-passengers*." Id. (emphasis in original). The Court reasoned that if the insurer had intended to limit its coverage for mental anguish to non-passengers by including such claims within the scope of coverage for injury to passengers, it could have done so explicitly. Id. However, the policy did not contain such a provision. Accordingly, the Court held that the decedent's family's claims for mental anguish were not subject to the $100,000 "Each Person" limit of liability. Id. at 1228.

The Court recognizes that several provisions in the Durango policy are nearly identical to provisions contained in the policy at issue in this case. Nonetheless, Durango is clearly distinguishable because, unlike the Durango policy, the policy at issue here contains the following provision regarding derivative claims, contained in Section II.E.6:

> Regardless of claimant's relationship to the injured party and the alleged injury, damage, loss, cost or expense claimed, all claims and related claims arising out of, based upon or attributable to the Bodily Injury to any person or Passenger are included in, and not in addition to, the Each Person and Each Occurrence Limits of Insurance specified in the Declarations, as applicable.

Dkt. # 2-2, at 13 (emphasis omitted). Harris and Shillington argue, however, that this provision simply makes clear that there are two separate categories of covered individuals who may suffer an injury: (1) passengers, and (2) persons other than passengers. Dkt. # 32, at 7; Dkt. # 34, at 8-9. They argue that a plain reading of this provision provides that the $100,000 "Each Person" limit is "applicable" to the bodily injury claim of any passenger, and that the $1,000,000 "Each Occurrence" limit is "applicable" to the bodily injury claim of "any person" who is not a passenger. Dkt. # 35, at 8; Dkt. # 36, at 7. They argue that, at a minimum, the language is ambiguous, and that such an

9

ambiguity requires the Court to interpret the policy in favor of coverage and against the drafter. Dkt. # 35, at 7; Dkt. # 36, at 6-7.

As a general matter, the policy provides that the "Each Person" limit of insurance of $100,000 limits Arch's "total liability for all damages because of Bodily Injury to any one Passenger . . . ." Dkt. # 2-2, at 13. Further, the policy provides that the "Each Occurrence" limit of insurance of $1,000,000 limits the "total liability for all damages because of Bodily Injury . . . sustained by one or more persons . . . as a result of any one Occurrence." Id. at 12. The issue with Harris's and Shillington's argument, however, is that it ignores the essential language contained in Section II.E.6. See OKLA. STAT. tit. 15, § 157 (2014) ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each helping to interpret the others."). The purpose of Section II.E.6 is not to define the limits applicable to "the 'Bodily Injury' claims of non-passengers" and passengers; such limits are already defined in Section II.E.5. Rather, the purpose of Section II.E.6 is to define the limits applicable to "all claims and related claims arising out of, based upon, or attributable to the Bodily Injury to any person or Passenger . . . ." Dkt. # 2-2, at 13. The provision makes clear that its terms apply to all such claims "[r]egardless of the claimant's relationship to the injured party and the alleged injury, damage, loss, cost or expense claimed . . . ." Id. Accordingly, Section II.E.6 determines the limit of liability applicable to any claim that arises out of, is based upon, or is attributable to the bodily injury to any person or passenger, even if the claim at issue would otherwise be subject to a limit of liability identified in Section II.E.5 (e.g., a non-passenger's claim of his or her own bodily injury). Here, it is true that Shillington and Lt. Shillington's parents are non-passengers and that they allege claims for their own bodily injuries. However, there is no doubt that Shillington's and Lt. Shillington's parents' claims all arise out of,

10

are based upon, and are attributable to the bodily injury to Lt. Shillington, a passenger. Therefore, Section II.E.6 defines the limit of liability applicable to Shillington's and Lt. Shillington's parents' claims.

Section II.E.6 provides that all claims subject to its terms are included in "the Each Person and Each Occurrence Limits of Insurance specified in the Declarations, as applicable." Id. Accordingly, if a claim arises out of, is based upon, or is attributable to the bodily injury to a passenger, that claim is included in the limit applicable to bodily injury sustained by any passenger (i.e., the $100,000 "Each Person" limit). Similarly, if a claim arises out of, is based upon, or is attributable to the bodily injury of any person other than a passenger, that claim is included in the limit applicable to bodily injury sustained by any person other than a passenger (i.e., the $1,000,000 "Each Occurrence" limit).[2] As already noted, Shillington's and Lt. Shillington's parents' claims arise out of, are based upon, and are attributable to the bodily injury sustained by a passenger. Accordingly, the Court finds that Shillington's and Lt. Shillington's parents' claims for their own

---

[2] An example of such a claim is the following: Assume that an individual, Person A, was standing on the ground at the time of an occurrence and was struck and killed by the aircraft when it crashed. Person A constitutes a non-passenger who sustained bodily injury. Assume that Person A's spouse, Person B, suffers mental anguish arising from Person A's death. Person B sues an estate, seeking damages for her own bodily injury (i.e., the mental anguish). Person B's claim arises out of, is based upon, and is attributable to the bodily injury to a non-passenger; therefore, Person B's claim is subject to the $1,000,000 "Each Occurrence" limit of liability.

bodily injuries are included in the $100,000 "Each Person" limit of liability applicable to bodily injury sustained by a passenger.³

Furthermore, the Court finds that this is the only reasonable interpretation of the provision, and that the provision is unambiguous. Harris's and Shillington's suggested interpretation of the provision would render the provision superfluous. They interpret the provision as providing that claims for bodily injury to passengers are subject to the $100,000 limit and that claims for bodily injury to non-passengers are subject to the $1,000,000 limit. As already noted, absent the provision contained in Section II.E.6, the Court would interpret the policy in accordance with the Durango policy: that claims for bodily injury to passengers are subject to the $100,000 limit, and claims for bodily injury to non-passengers are subject to the $1,000,000 limit. In other words, Harris's and Shillington's suggested interpretation of the provision would render the provision meaningless. Such an interpretation is contrary to the principles of policy interpretation under Oklahoma state law. See OKLA. STAT. tit. 15, § 157. Accordingly, Harris's and Shillington's interpretation of the

---

3    In Old Republic v. San Antonio Piper, Inc., No. SA-14-CA-002-FB, 2014 WL 12496572 (W.D. Tex. July 21, 2014), the U.S. District Court for the Western District of Texas reached this same conclusion with respect to a similar provision. The court found that, despite otherwise being similar to the policy in Durango, the policy at issue in Piper was distinguishable because it contained a derivative-claim provision, which stated: "[T]he total liability of the Company for all Damages, including but not limited to Damages for . . . mental anguish, . . . regardless of who makes this claim, arising from, deriving from, related to or because of bodily injury to passengers shall not exceed . . . (A) as respects any one passenger the amount [of $100,000]." Id. at *4. Moreover, the Piper defendants argued that the policy's $100,000 "per passenger" limit did not apply because they were not passengers and they had suffered their own bodily injuries (i.e., mental anguish). Id. The court explained that, while the defendants had alleged their own bodily injury under the policy and were not passengers in the aircraft, their "claims for their own bodily injury ar[o]se or derive[d] from, relate[d] to and/or exist[ed] because of bodily injury to a passenger." Id. Therefore, the court found that, pursuant to the derivative-claim provision, the $100,000 "per person" limit of liability applied to the decedent's family's claims for mental anguish. Id. The Court considers the reasoning in Piper to be persuasive.

provision is not only incorrect, but it is also unreasonable. The Court finds that the policy has only one reasonable interpretation and, therefore, it is unambiguous. See Max True Plastering, 912 P.2d at 869.

Arch has shown that there is no genuine dispute as to any material fact, and that it is entitled to judgment of a matter of law. Accordingly, the Court finds that Arch's motion for summary judgment should be granted, and that Shillington's and Harris's motions for summary judgment should be denied.

**IT IS THEREFORE ORDERED** that plaintiff/counterclaim defendant Arch Insurance Company's motion for summary judgment and brief in support (Dkt. # 22) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the motion for summary judgment and brief in support (Dkt. # 35) filed by interested party/counterclaim plaintiff Courtney Elyse Shillington, Personal Representative of the Estate of Dale Bryant Shillington, is **denied**.

**IT IS FURTHER ORDERED** that the motion for summary judgment and brief in support (Dkt. # 36) filed by defendant/counterclaim plaintiff Linda Harris, Personal Representative of the Estate of Randall Lee Harris, is **denied**.

**DATED** this 7th day of May, 2019.

*[signature: Claire V. Eagan]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE